

# LAW OFFICES OF
# WILLIAM CAFARO

*William Cafaro, Esq.*
ADMITTED IN NY, CA, MD & TX
Email: *bcafaro@cafaroesq.com*

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: *akumar@cafaroesq.com*

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: *lleon@cafaroesq.com*

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

May 25, 2021

*Via ECF*
Hon. Arlene R. Lindsay, U.S.M.J
United States District Court
Eastern District of New York
814 Federal Plaza
Central Islip, New York 11722-4451

      Re: Correa v. Laundry Palace Hunt, Inc. et al
         Case No.: 19-cv-06433 (ARL)

Your Honor:

  This is a request for approval of the Settlement Agreement[1] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Amended Settlement and Release Agreement ("Agreement") appended as Exhibit "1."

## I. Background and Claims

  According to the Plaintiff, Osman Carrillo Correa ("Plaintiff" or "Mr. Correa") the Defendants own several 24-hour laundromats on Long Island. According to Mr. Correa's best recollections, he worked for the Defendants as a general laborer whose duties included, but were not limited to, customer service, making change for customers, sweeping, mopping, and repairing washing machines and dryers. According to his best recollections, he worked for the Defendants from on or about December 13, 2013 until on or about September 9, 2019. During the statutory period, Mr. Correa recollections working seven days per week for a total of 56 hours per week. According to his best recollections from the beginning of his employment until the end of August 1, 2017, he was paid $8.00 per work hour. From August 2, 2017 until the end of his employment he was paid $10.00 per work hour. He was paid these wages in cash. Also, according to his best recollections, he did not receive an annual wage notice when he first began working for the Defendants or since then, and his wage statements were inaccurate as they did not show the correct number of hours he worked for the Defendants. Given these claims, Mr. Correa filed a complaint

---

[1] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.

for unpaid minimum wages, overtime and statutory record keeping violations under the FLSA and NYLL.

The Defendants disputed the Plaintiff's claims that he is owed this money. The Defendants challenged the hours that Plaintiff claims that he worked and whether there were any wage statement violations. The Defendants further challenged whether Plaintiff was an employee of Defendants. The defendants further alleged that due to the ongoing COVID-19 pandemic they were unable to withstand a large judgment.

The Parties exchanged paper discovery in this action and then mediated the case with experienced neutral Adam Halper. After hours of negotiation, the parties were able to reach the resolution in this action. Given this, the parties were able to fully assess their claims and defenses in this action.

## II. The Settlement Reached Between the Parties

In his sworn interrogatory responses, Mr. Correa stated that he worked 8 hours per day, 7 days per week. As such, according to the Plaintiff's best recollections, under the FLSA and NYLL, his minimum wage and overtime claims are worth $74,560.00, which is inclusive of 100% liquidated damages. Therefore, with this settlement of $47,500.00, the Plaintiff is receiving **63.71%** of the full value of his FLSA and NYLL claims.

Plaintiff believes that the $47,500.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of more extensive discovery and ongoing litigation. While Plaintiff was confident that he would be able to challenge the Defendants' inferences successfully, Mr. Correa is uncomfortable testifying in a formal setting. If his testimony had been rejected by the trier of fact, his recovery could have been significantly minimized. Lastly, each settling party is represented by counsel experienced in wage and hour practice.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. In addition, the parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Plaintiff prefers to receive his proceeds without the inevitable delay and significant risks that continued litigation would entail.

## III. The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotations omitted). In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens

and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

*Plaintiff's Range of Possible Recovery*

As stated above, the proposed settlement represents **63.71%** of the Plaintiff's claims and is certainly toward the higher end of the range of reasonableness of recovery, particularly after considering the obstacles Plaintiff faced. It will also enable Plaintiff to avoid anticipated burdens and risks in going forward. *See, Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

Avoidance of Anticipated Burdens and Expenses

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). The settlement agreement avoids anticipated burdens in this action. Specifically, it avoids the time and expense of a jury trial. Moreover, as stated above, Mr. Correa is uncomfortable testifying in Court, if his testimony were not believed, it is likely that a trier of fact would reduce his reward. In light of the totality of the circumstances, the Settlement Agreement represents a reasonable compromise of the *bona fide* disputes in this matter.

Litigation Risks

Importantly, Plaintiff's maximum claimed recovery would be far from inevitable had this case proceeded to trial. If the Defendants' evidence was taken as true, they would substantially reduce the Plaintiff's recovery. This makes the amount of post-trial recovery uncertain. Settlement permits the Plaintiff to avoid the risk of obtaining no recovery or substantially reduced recovery at trial. *See, Gomez v. Bogopa Madison LLC*, No. 17-CV-5006 (RA), 2017 U.S. Dist. LEXIS 211003, at *4-5 (S.D.N.Y. Dec. 21, 2017). Lastly, there are also serious concerns about collectability as the Company has received reduced revenue during the pandemic.

Whether the Settlement Agreement is the Product of Arm's-Length Bargaining

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties participated in arm's length settlement discussions to arrive at this settlement. These discussions occurred privately and later before a mediator approved through the EDNY Mediation panel. As such, because the settlement involves a clear and *bona fide* wage

dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

### Possibility of Fraud or Collusion

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations between counsel. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### IV. Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering the unpaid wages and statutory violations under the FLSA and NYLL. Under the retainer agreement between Plaintiff and his counsel, Plaintiff's counsel is entitled to a one third fee on the gross recovery of $47,500.00, which equates to $15,833.33 plus the out of pocket costs and disbursements. These costs total $1,205.00, and consist of the filing fee, fee for service of process and the Plaintiff's portion of the mediation. Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read the *Cheeks* decision to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3-4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). The foregoing notwithstanding, the undersigned submits as follows in support of the requested fee:

Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate for work in recovering alleged withheld compensation in this action. I have personally expended 32.1 hours in the prosecution of this case. *See* Exhibit 2, Attorney Kumar's time records. "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (citing *In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been an associate with the Law Offices of William Cafaro since 2013 and the Managing Attorney of the firm since 2017. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as

a law clerk for several employment law firms, including Schwartz & Perry, LLP[2] and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis (ret.) of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. I was further admitted to the Federal District Court of New Jersey in 2019. Since joining the firm, I have been responsible for actively handling and maintaining a case load which at any given time are in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial or resolution. Further, while working at the firm, I have conducted numerous trials (both bench and before a jury) and arbitrations on behalf of employees in employment law disputes, including wage and hour matters. Moreover, I have been selected as a "Rising Star" by Super Lawyers in the "Employment Litigation" category for the years 2017, 2018, 2019, and 2020. I was also an officer of the South Asian Bar Association of New York in the years 2018 and 2019 and I am currently a member of the National Employment Lawyers Association – New York Chapter. Moreover, in addition to representing plaintiffs who are current or former employees retained on a contingency fee basis, this Firm also represents some clients who pay hourly rates to the firm in employment litigation matters. Of those clients, depending on each client's respective financial abilities, clients have agreed to compensate the undersigned at rates of $300.00 to $400.00 per hour.

My normal hourly rate for wage and hour actions is $300.00 per hour and the Plaintiff is requesting this rate for my work in this case. This rate is reasonable based on my experience. *See, Yu Wei Cao v. Miyama, Inc.*, 2020 U.S. Dist. LEXIS 149336, at *3-*8 (E.D.N.Y. Aug. 18, 2020) (awarding $300.00 per hour for a senior associate with 5 years' experience) At the requested rate, the total lodestar is $9,630.00. We are further requesting an additional $1,205.00 in reasonable out of pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). The out of pocket expenses are:

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $ 400.00 | Cost for filing in Court |
| Servco Process | $ 130.00 | Service on Corp Defs |
| Gotham Process | $ 75.00 | Service on Ind Defs |
| Adam J. Halper | $ 600.00 | Mediator |
| Total | $ 1,205.00 | |

The preceding out of pocket expenses are fair and reasonable and ordinarily charged to the file in wage and hour actions.

Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See, In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Moreover, a multiplier is used to compensate Plaintiff's counsel for time

---
[2] Now called Schwartz Perry & Heller, LLP

that is required administering the settlement. *See, Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases, they have awarded multipliers that are even higher. *See, Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also, Riveras v. Bilboa Rest. Corp.*, No. 17-CV-4430-LTS-BCM, 2018 U.S. Dist. LEXIS 211166, at *4 (S.D.N.Y. Dec. 14, 2018) (approving a lodestar multiplier of 6.7 over Defendants' objection). Here, the multiplier requested is approximately 1.64 which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might. Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

### V. Conclusion

For the reasons set forth above the Plaintiff requests that the Court approve the settlement as reflected in the Settlement Agreement. Plaintiff further requests that the Court approve the attorneys' fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

By    Amit Kumar, Esq. (AK 0822)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602

New York, New York 10018
(212) 583-7400
Akumar@CafaroEsq.com

cc:
Defense Counsel (via ECF)